CLARK *et al. v.* FLEMING *et al.*

[94 South. 458. No. 22869.]

1. RECEIVERS. *Appointment discretionary, and exercised as auxiliary to attainment of justice.*

An application for the appointment of a receiver is one which is addressed to the sound discretion of the court, to be exercised as an auxiliary to the attainment of the ends of justice.

2. RECEIVERS. *Grounds for appointment stated.*

In order to obtain the appointment of a receiver, the plaintiff must show, first, either that he has a clear right to the property itself,

or that he has some lien upon it, or that the property constitutes a special fund to which he has a right to resort for the satisfaction of his claim; secondly, that the possession of the property by the defendant was obtained by fraud, or that the property itself, or the income arising from it, is in danger of loss, from the neglect, waste, misconduct, or insolvency of the defendant.

APPEAL from chancery court of Washington county.

HON. E. N. THOMAS, Chancellor.

Suit by H. H. Clark and others against Albert Fleming and others. From a decree requiring a bond in lieu of the appointment of a receiver under Code 1906, section 629 (Hemingway's Code, section 389), plaintiffs appeal. Affirmed and remanded.

*B. B. Carmichael,* for appellants.

Was this a case warranting the appointment of a receiver? Now, as I understand the law, in cases of the kind at bar, the proponent must come into court with clean hands—he must show, according to the decisions, a clear right to the property, and, the court must have due regard for those who oppose the application. When it is asserted that Fleming has shown neither a clear, or even cloudy right to the possession of the property in controversy, it's putting it mildly. Surely the courts will prevent a man from gaining the apparent title to the rightful property of another through artifice, deception and fraud coupled with a receiver to straddle the roof and collect rents from the occupant.

In addition to the foregoing errors of law warranting a reversal of the order authorizing the appointment of a receiver, we insist that the trial court, especially, at page 28 of the record, erred in refusing to allow the appellants to prove by the appellee, Hampton, that at the time the agent of Fleming first approached him with reference to the purchase of the property of Fleming, he fully advised Allen that it was for Clark's benefit that they held title to the land, and, that they had agreed to give him time to raise

the money and take a reconveyance of the land, this right was conferred by sections 1599 and 1593, Hemingway's Code of Mississippi. Too, we think the legal title, at least, remains in Bolden and Hampton, because they only signed the deed to Fleming as individuals and title was vested in them only as trustees as shown by pages 10 and 11 of the record.

In conclusion, it is submitted on behalf of the appellants Clark and his wife, they have shown that the attempt of Bolden and Hampton to sell the property to the appellee Fleming was premature, and, that they have a right to redeem the same by payment of the amount of eight hundred dollars and interest, and that Fleming is chargeable with notice of the rights of the Clarks which, as a matter of law, is not in accordance with the order of the court appealed from, and, therefore, the order sustaining the application for a receiver should be reversed and remanded.

*Boddie & Farish,* for appellees.

We are unable to find any merit in the contention of appellants, and respectfully submit that the finding of the chancellor was correct. We deem it unnecessary to cite any authorities, but direct the court's attention to general rule for appointment of a receiver as stated in Fourth Pomeroy's Equity Jurisprudence, in section 1484:

"The appointment of a receiver is, as a general rule, discretionary. The discretion is not arbitrary or absolute; it is a sound and judicial discretion, taking into account all the circumstances of the case, exercised for the purposes of promoting the ends of justice, and of protecting the rights of all the parties interested in the controversy and the subject-matter, and based upon the fact that there is no other adequate remedy or means of accomplishing the desired objects of the judicial proceedings." Therefore, the direction of the court in appointing a receiver will not be interfered with by any appellate court, unless it is clear that it has been abused or exercised in a manner in-

consistent with well-established rules governing such application.   Respectfully submitted.

SYKES, P. J., delivered the opinion of the court.

The appellants, as complainants in the chancery court, in their original bill pray that the court decree certain conveyances, absolute upon their face, to be mortgages, and that they be allowed to redeem the land in question upon the payment of the correct amount due thereon.

The bill alleges: That these complainants purchased from one Mrs. Mayor the two houses and lots in controversy, securing the amount due by mortgage or by deed of trust. Default having been made in the payment, the property was advertised for sale by Mrs. Mayor. Prior to the sale it was agreed between the complainants and defendants Bolden and Hampton, as trustees for a certain fund, that these trustees would either bid in the lands or would arrange with Mrs. Mayor to bid them in and sell them to Bolden and Hampton, trustees, with the understanding that these trustees would permit complainants a reasonable time within which to consummate a loan and repay the trustees the price paid by them at the sale or to Mrs. Mayor. That these two trustees arranged for a conveyance of the land to them after it was purchased at the foreclosure sale by Mrs. Mayor. Mrs. Mayor conveyed to them. Thereafter the trustees sold the land to the defendant Fleming. That while the deed from Mrs. Mayor to Bolden and Hampton, trustees, appears upon its face to be an absolute deed, complainants have never parted with the possession of the land, and that this deed was understood between the parties to be a mortgage, and is in fact a mortgage. That the conveyance of the land by Bolden and Hampton, trustees, to the defendant Fleming constituted a fraud upon the rights of the complainants. That Fleming is not a *bona-fide* purchaser for value, that he knew at the time of his pretended purchase that the grantors had no right to convey the land because they held

it in trust for the complainants. That the purchase was for the purpose of obtaining an unfair advantage over the complainants and constitutes a fraud upon their rights. That the purchase price paid by him is grossly inadequate. These in brief constitute the material averments of the bill.

The joint answer of Bolden and Hampton admits that they purchased the land as trustees from Mrs. Mayor, who was the purchaser at the foreclosure sale. It denies an agreement to either buy the lands at the foreclosure sale or to arrange with Mrs. Mayor for her to buy the lands and then sell them to these defendants for the use of complainants, and further denies the agreement that they would allow the complainants a reasonable time in which to get a loan on said land to repay them. It denies that the deed obtained by them from Mrs. Mayor was to operate as a mortgage. It admits the sale by them to the defendant Fleming.

The answer of Fleming admits purchasing the land from Bolden and Hampton trustees. It denies any knowledge upon his part of any agreement between complainants and defendants Bolden and Hampton. It also avers that this defendant is a *bona-fide purchaser for value without notice.*

By cross-bill then this defendant alleges that complainants have recognized his title to these two houses, and for a while paid him rent thereon; that they are now indebted to him for a certain amount of rent. It alleges that the complainants are in possession of the two houses, that they are insolvent, and that if they are allowed to continue this possession the property will be injured, and perhaps destroyed, and irreparable injury will be done this cross-complainant unless a receiver is appointed to take charge of the two houses *pendente lite.* The cross-bill then asks for the appointment of a receiver.

A motion was also made by the defendant Fleming for the appointment of a receiver *pendente lite.* This motion was heard upon the pleadings above set out, and upon testimony.

The learned chancellor instead of appointing a receiver required the complainants to give bond in accordance with section 629, Code of 1906 (section 389, Hemingway's Code). This appeal is prosecuted from this decree.

The testimony shows that default was made by the complainants in their payments to Mrs. Mayor, and that the property was duly advertised and sold by the trustee and purchased by Mrs. Mayor at this sale; that she had no agreement with these complainants to allow them to repurchase the land from her or to treat her purchase in any way as a mortgage; that her agent arranged to sell and did sell the property to the defendants Bolden and Hampton as trustees for a school. The husband of Mrs. Mayor who acted in this matter for her testified that Hampton told Clark in his presence that they could not buy the property in for him, but would buy it for themselves, and sell it to Clark, provided he got the money by the 10th day of January. The foreclosure sale took place the latter part of December. Bolden testified, in substance, that the agreement with Clark was that these two trustees of the school fund would purchase the property from Mrs. Mayor, and would sell it to him provided he got the money by the 10th day of January. Hampton testified, in substance, to the same arrangement, and, further, that the agreement was to sell it to Clark provided he got the money in about ten days. Hampton and Bolden as trustees sold the property to Fleming on January 28th; consequently, under the testimony of all of these witnesses, the time had expired within which they had agreed to sell the property to the Clarks, assuming, but not deciding, that such an oral agreement could have been binding. Clark's testimony was, in effect, that he was to be allowed a longer time within which to purchase or redeem the property. We carefully refrain from expressing any opinion upon the merits of the case, further than is necessary to decide the question now before us, which question is whether or not under this testimony the chancellor was warranted in requiring the bond to be made by complainants *pendente*

*lite.* The testimony also showed that the complainants were insolvent, and had no property out of which the rents or profits on this property could be made during their continued possession of it, nor that any damages could be recovered of them in case of any negligent mismanagement or destruction of these two houses.

The chancellor under this testimony was warranted in believing the testimony of the two trustees, Hampton and Bolden, namely, that the only agreement they made with Clark was an oral one, to the effect that they would sell him the land provided he could purchase it within ten days or by the 10th of January; that he failed to do so, and consequently his right to purchase, if it was an enforceable right, had expired, and therefore the sale from these trustees to Fleming vested in Fleming a good title. We express no opinion whatever upon the question as to whether or not Fleming was a *bona-fide* purchaser for value if Bolden and Hampton were only mortgagees. This being true, it was eminently proper for the chancellor to either appoint a receiver *pendente lite* or require the execution of a bond by the complainants. The general rule with reference to the appointing of a receiver by a chancellor is well stated in section 1484 of 4 Pomeroy's Equity Jurisprudence (4th Ed.), as follows:

"The appointment of a receiver is, as a general rule, discretionary. The discretion is not arbitrary or absolute; it is a sound and judicial discretion, taking into account all the circumstances of the case, exercised for the purpose of promoting the ends of justice, and of protecting the rights of all the parties interested in the controversy and the subject-matter, and based upon the fact that there is no other adequate remedy or means of accomplishing the desired objects of the judicial proceeding. Therefore the discretion of the court in appointing a receiver will not be interfered with by an appellate court, unless it is clear that it has been abused or exercised in a manner inconsistent with well-established rules governing such application."

It is of interest to note that this great law writer in setting forth the principles governing the court's discretion in the matter as set forth in section 1485 of this work gives a practical rescript of the opinion of the chancellor in the case of *Mays* v. *Rose et al.,* Freem. Ch., 703. From which opinion we may be pardoned from quoting *in extenso* the following:

"An application for the appointment of a receiver, is one which is addressed to the sound discretion of the court, to be exercised as an auxiliary to the attainment of the ends of justice. It is one of the modes in which the preventive justice of a court of equity is administered. The great object is to secure the property or thing in controversy, so that it may be subjected to such order or decree as the court may make in the particular case. It is intended equally for the security of both plaintiff and defendant. The possession of the receiver is not adverse to, or in hostility to the rights of the defendant; that possession is the possession of the court, held equally for the greater safety of all the parties concerned. *Verplank* v. *Caines,* 1 John. Ch. Rep. N. Y. 58. A reference to the various decisions upon motions for the appointment of receivers, shows that each case has been made to depend upon its own peculiar features, and throws but little light upon any new case, except so far as they establish the general principles, which should govern the court in the exercise of its discretion upon these motions. These principles are: That the plaintiff must show, first, either that he has a clear right to the property itself; or that he has some lien upon it; or that the property constitutes a special fund to which he has a right to resort, for the satisfaction of his claim. And secondly, that the possession of the property by the defendant was obtained by fraud; or that the property itself, or the income arising from it, is in danger of loss from the neglect, waste, misconduct or insolvency of the defendant."

Applying these principles to this case, the chancellor was warranted in believing that the cross-complainant

Fleming had a clear right to the possession of the property, and that the property or the income arising from it is in danger of loss from the neglect, waste, misconduct, or insolvency of the cross-defendants.

*Affirmed and remanded.*