FENN, guardian, *v.* CASTELANNA, administratrix, *et al.*

*Clint W. Hager* and *J. F. Kemp,* for plaintiff in error.

*F. Lee Evans, Douglas, Andrews & Cole,* and *J. D. Tindall,* contra.

REID, Chief Justice. This case involves a controversy over the proceeds of a life-insurance policy which had been issued upon the life of Emanuele Castelanna. The policy was issued and delivered to the insured in Tampa, Florida, in 1938 while he was a resident there. It named as beneficiary his wife, Virginia Castelanna, but the policy reserved to the insured the right to substitute a new beneficiary, provided the policy be of force at the time and that there be no written assignment of it on file with the company. In 1939, after the first year's premium had been paid, Castelanna moved to Georgia, and in 1940, while a resident of Georgia, he exercised his right which had been reserved, revoked the designation of the original beneficiary, and directed that any insurance that might accrue under the policy be payable to his estate. This change of designation was endorsed upon the policy by the company. In 1942, while still domiciled in Georgia, Castelanna died intestate, leaving surviving his widow, Mrs. Virginia Castelanna, and four minor children. At the time the policy was issued and delivered there was of force in the State of Florida a statute providing as follows: "Whenever any person shall die in this State leaving insurance on his life, the said insurance shall inure exclusively to the benefit of the child or children and husband or wife of such person in equal portions, or to any person or persons for whose use and benefit such insurance is declared in the policy; and the proceeds thereof shall in no case be liable to attachment, garnishment, or any legal process in favor of any creditor or creditors of the person whose life is so insured, unless the insurance policy declares that the policy was effected for the benefit of such creditor or creditors: Provided, however, that whenever the insurance is for the benefit of the estate of the insured or is payable

to the estate or to the insured, his or her executors, administrators, or assigns, the proceeds of the insurance may be bequeathed by the insured to any person or persons whatsoever or for any uses in like manner as he or she may bequeath or devise any other property or effects of which he or she may be possessed, and which shall be subjected to disposition by last will and testament." The insured having died intestate while domiciled in Georgia, Mrs. Virginia Castelanna qualified in Fulton County as administratrix of her deceased husband's estate, and claimed the proceeds of the policy in behalf of the estate. The insurance company, which was a Florida corporation, filed its petition for interpleader, admitting that the policy was of force and that it was liable thereunder, but setting up that, due to the foregoing statute of Florida and the fact that the contract was entered into in that State and to be performed in that State, it was in doubt as to whether it would be protected in paying the proceeds to the administratrix instead of to the widow in her individual capacity and to the surviving children jointly. The interpleader was allowed upon the payment of the proceeds of the policy into the registry of the court and the controversy allowed to proceed between a guardian ad litem who had been named to act in behalf of the minor children on the one hand, and Mrs. Castelanna as administratrix of the estate on the other hand. Upon an agreed statement of facts in conformity with what has been stated above, the judge, to whom the case was submitted upon the law and the facts, awarded the money thus paid into court to the administratrix of the estate, and the exceptions are to this judgment.

■ If the law of Georgia is to control the disposition of the proceeds of this life insurance, the administratrix was entitled to prevail. The Code, § 113-901, after declaring the law of descent with respect to realty says: "The title to all other property owned by a decedent shall vest in the administrator of his estate for the benefit of the heirs and creditors." All personalty of a deceased person passes and is administered according to the law of his domicile. *Latine* v. *Clements*, 3 *Ga.* 426, 432; *Grote* v. *Pace*, 71 *Ga.* 231; *Thomas* v. *Morrisett*, 76 *Ga.* 384; *Squire* v. *Vazquez*, 52 *Ga. App.* 215, 216 (183 S. E. 127). The Code, § 56-903, provides: "The insured may direct the money to be paid to his personal representative or to his widow, his children, or his assignee. Upon

such direction given, and assented to by the insurer, no other person may defeat the same: Provided, however, that assignment of the money shall be good without such assent." The administrator is the proper representative to sue on policy contract where the estate of the insured or his executors, administrators, etc., are named as beneficiaries. *Queen Insurance Co.* v. *Peters,* 10 *Ga. App.* 289 (3) (73 S. E. 536). As respects the proceeds of an insurance policy of the character here involved, there is in Georgia no statute such as the one in Florida and in some other States exempting the proceeds of insurance from the claims of creditors.

The question now to be determined is whether, in view of the reasons appearing in the foregoing statement, if we should be required to give effect to the Florida statute in respect to the funds in controversy rather than the law of our own State, the terms of the statute require a judgment contrary to that rendered. We find little uniformity in the rulings made by the various courts as to what law shall govern in the many varying situations presented upon the death of an insured. Many of the cases examined on this phase of the case have turned on the question of some provision in the policy itself which specified what law was to control, but even in those cases the terms of the policy have not always been allowed to be enforced. It has sometimes been held that the law of the State where the policy was issued (that is at the domicile of the company itself), more often that the law of the State where the policy was said to have been executed and delivered, that is, in some other State where an agency is located at the domicile of the insured, must control. In some instances these places have been the same. It has also been held that the law of the State where the contract was to be performed (as distinguished from the place where it was executed) should control. It has also been held that the law of the State where the insured was domiciled, that is, lex domicilii decedendis, would control, especially in reference to beneficiaries and claims over the proceeds of the policy. All of this is observed without reference to many other varying circumstances where two or more of these several conditions did not coincide. An annotation to the case of United States Mortgage & Trust Co. *v.* Ruggles, 258 N. Y. 32 (179 N. E. 250, 79 A. L. R. 802, 809), gives some illustration of the variety of rules that have arisen and have been applied; but, as exhaustive as it is, it does

not undertake to treat the whole law on the subject. In the present case, because of the view later to be expressed, we shall do no more than point to some sources of authority upon this question. We do this only because of the very close relation to the reasoning upon which our decision will be turned. Perhaps no one of the authorities here cited will in terms either support or conflict with the result we reach, but a study of them has formed a background of this result, and they are to some extent stated. 7 Cooley's Briefs on Insurance (2d ed.), 6333, 6335, 6337; 8 Id. (2d ed. Supp.) 980; Annotations 52 A. L. R. 413; 52 L. R. A. (N. S.) 280; 63 L. R. A. 847; 26 A. L. R. 129; Roberts v. Winton, 100 Tenn. 484, 45 S. W. 673 (41 L. R. A. 275); 1 Couch on Insurance, §§ 200, 330, 330rr, 308, and 346; 11 Am. Jur. 456, § 155; 37 C. J. 364, 365, § 12; Code, § 102-108; *John Hancock Mutual Life Insurance Co.* v. *Yates, 182 Ga.* 213 (185 S. E. 268); John Hancock Mutual Life Insurance Co. v. Yates, 299 U. S. 178 (57 Sup. Ct. 129, 81 L. ed. 106).

The Florida statute relied upon begins with the language "Whenever any person shall die in this State leaving insurance on his life," and then provides that the proceeds of such insurance shall inure exclusively to the benefit of the surviving husband or wife and children, but provides that others also may be made beneficiaries, and that if properly specified as a beneficiary even a creditor may receive the proceeds of such policy of insurance. It does not specifically refer to policies executed and delivered in that State, and by its terms seems to apply only to persons domiciled therein at the time of death. Therefore on first impression it would seem to be a statute primarily concerned with the control of personalty of the deceased person, and be related to the law of descent and distribution rather than directly to the construction and effect to be given to a policy of insurance. Its purpose and its terms seem to be to exempt the proceeds of insurance, where otherwise they would be a part of the estate, from the claims of creditors. In other words, it seems primarily to concern the administration of estates. It does not specify what a policy must contain, or undertake to say how it shall be construed. It does not undertake to distinguish between policies issued elsewhere from those executed in Florida. It does not legislate upon an insurance contract, but upon the proceeds arising from one, and then only upon the death

of the insured in that State. It does not lay any prohibition on either the insurer or the insured. It merely says, in a case where the policy should be made payable to the estate, that it shall be exempt from the claims of creditors and held for the use of the surviving spouse and children. See Gilchrist *v.* Jeffcoat, 64 Fla. 79 (59 So. 243). If we be called on to *construe* the policy, its terms are clear and the result in no sense doubtful, unless, as contended by plaintiff in error and as held by some of the authorities in the foregoing collection, the statute be treated as a part of the policy, because executed and to be performed in that State; but so treating it, the disposition of the proceeds in such a case would seem to control only "whenever [the insured] shall die" in that State. We have examined the Florida cases dealing with the statute, and have been unable to discover with certainty the exact meaning given to it by the Florida courts, except in very limited circumstances. With reference to the statute it was said by the Florida Supreme Court in Equitable Life Assurance Society *v.* McRee, 75 Fla. 257 (78 So. 22), "It is manifest that the statute can have no force beyond the limits of this State," and in dealing with a case where the contract of insurance was made in Alabama and where the insured later, while a resident of Georgia, changed the beneficiary, as in the present case, so as to make the policy payable to his estate, the court held that the statute was not applicable "for the purpose of designating the parties to whom the proceeds of the policies may be paid by the insurer," although the insured in that case died a resident of Florida. After pointing out the making of the contract in Alabama and the change of beneficiary in Georgia, which change was held to be controlling, it was said: "The assumption naturally is, in the absence of anything to the contrary appearing, that the contracts were made with reference to the laws of the State in which the transactions occurred, unless the contracts by intendment or otherwise had reference to the place of performance by the insurer." It was further pointed out, after noting that there was nothing in the public policy of that State to forbid the payment of proceeds of insurance policies to an administrator of a decedent's estate when the policy contracts were made in another State and without reference to the laws of that State: "The administrator is appointed under the law of the decedent's domicile at his death, and this was doubtless contem-

plated in making the policy contracts." In the later case of Milam *v.* Davis, 97 Fla. 916 (123 So. 668), a controversy between the widow on the one hand and the creditors on the other was determined apparently without reference to where the policies were issued; and although it had been said in the McRee case, supra, that the question there involved was one of contract and not one of situs or of the beneficiaries of a decedent's personal estate, emphasis seemed to be placed on the domicile of the decedent at the time of his death, because Brown, J., in a special concurrence, speaking of the language "Whenever any person shall die in this State, . ." construed that language to mean that the statute was intended to be applicable where a person had his legal domicile therein, even though in fact the death occurred without the State rather than within its limits. We find nothing in the cases arising from the statute, as decided in Florida, that constrains us to a view of its meaning different from that above expressed as representing our own thought upon the question. In the very contract itself the insured reserved the right to change the beneficiary. His right was exercised while he was domiciled in Georgia, and there is nothing in the law of Georgia to forbid the new designation. On the contrary, such a change in the contract is permitted, and when made will be given full effect by the law of this State. Code, § 56-903. It is stated in 2 Couch on Insurance, 828, § 308: "A statute exempting policies from the claims of creditors does not prevent the changing of the beneficiaries by the insured and the insurer." It is our opinion that, without any special reference to lex loci contractus or lex domicilii decedendis, the funds were properly awarded to the administratrix.

*Judgment affirmed. All the Justices concur.*